OPINION OF THE COURT
Per Curiam.
Judgment entered November 27, 1995 reversed, without costs, and judgment awarded in favor of defendant dismissing the action.
On the thin record developed at the trial of this small claims action, we find no basis to impose liability upon the defendant, a collateral loan broker or pawnbroker (see, General Business Law art 5), for its alleged "negligen[t] loss” of a bracelet pledged by the plaintiff. Since the award obtained by plaintiff below does not accomplish "substantial justice * * * according to * * * substantive law” (CCA 1804, 1807), we reverse and grant judgment to defendant dismissing the action.
The narrow claim advanced by plaintiff at trial was that defendant sold the pledge without giving him 30 days’ notice as required by the pawn agreement and statute (see, General Business Law § 49 [1]). The trial court appropriately rejected the plaintiff’s lone assertion, expressly finding in its written decision that defendant fully satisfied the statutorily prescribed notice, publication, and filing requirements governing the sale of the pledge prior to the public auction held on August 23, 1995, nearly one year after defendant received the collateral from plaintiff in exchange for a loan as yet unpaid. The court nonetheless cast defendant in damages for conversion, based largely on its unsupported conclusion that defendant violated the purchase-back provisions of General Business Law § 49 (1)* in failing "to permit claimant to redeem the bracelet within 10 days after [defendant’s] repurchase at public auction.”
The trial record does not establish, however, that plaintiff at any time attempted to redeem the pledge through a proper *665 tender of the loan amount and additional charges due or that defendant unlawfully disposed of the pledge within 10 days of the public auction. Rather, the evidence showed only that plaintiff, after admittedly having "forgot[ten] about the item in the pawnshop”, learned that the pledge was "already sold” upon his eventual return to the defendant’s premises to "investigate” the status of the loan. The date of the plaintiff’s return to the pawnshop is nowhere fixed in the record. Indeed, the only evidence bearing on the issue is the plaintiff’s sparse account that he "eventually remember[ed]” about the pledge "roughly about two months ago” (measuring from the trial date of Nov. 1, 1995), and his answer, "Yes”, to the court’s question as to whether that meant "August of 1995”. This vague and uncertain showing with respect to the underlying chronology of events is hardly sufficient to sustain the court’s speculative determination that defendant improperly disposed of the pledge "almost immediately” after the public auction on August 23, 1995. Nor was the court warranted in "inferr[ing]” such a critical fact from the defendant’s failure to present documentary evidence on the issue at trial, there being no reliable opposing evidence upon which such an inference could operate (see, Noce v Kaufman, 2 NY2d 347, 353; Laffin v Ryan, 4 AD2d 21, 27). A judicial award, even one issued in the context of a small claims action, must rest upon competent evidence, and not mere inference or surmise.
Further, to the extent the trial court based the award on its conclusion that defendant violated General Business Law § 49 in failing to notify plaintiff of his "right of redemption” after the public auction, we note only that the carefully drawn provisions of the regulatory statute make no mention of such a notice (cf., General Business Law § 50 [2]), and no such notice requirement should be engrafted onto the statute through the guise of judicial interpretation (see, Pajak v Pajak, 56 NY2d 394, 397).
Were we not reversing and dismissing the action outright, we would, in any event, reduce plaintiff’s recovery to the principal sum of $1,000, or twice the amount of the underlying loan, as required by the printed terms of the pawn agreement issued to plaintiff. Absent a showing of conversion, not made here, such a contractual limitation upon liability is valid and enforceable against a pledgor of goods (see, I.C.C. Metals v Municipal Warehouse Co., 50 NY2d 657; Wilson v Gem Pawnbrokers Manhattan Corp., 186 AD2d 517). Contrary to the view expressed below, the limitation provision did not as applied *666 here "contravene” the terms of General Business Law § 50 (1), which provide for reimbursement to a pledgor of the "surplus money, if any, arising from any such [public auction] sale”, and not, as the trial court held, reimbursement of the surplus created by any postauction resale(s) of pledged goods.
Ostrau, P. J., McCooe and Davis, JJ. concur.

 That section reads, in part, as follows: "If the pledge, at such sale, shall be purchased back by the collateral loan broker, the pledgor shall be entitled to redeem same within ten days thereafter by tendering to the collateral loan broker the amount of the loan with the interest due thereon, the amount of the auctioneer’s lawful commission, lawful extra care charges, and the expense of the advertisement of the sale.”